Blair Redmond
P.O. Box 21638
San Jose, CA 95151
408-644-4915

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Blair Redmond,<br>    Plaintiff,<br>vs.<br>The City of San Jose,<br>San Jose Police Department,<br><br>Officer Tony Diep #3781,<br>Officer Daniel Pfiefer #3951,<br>Officer Matthew Blackerby #3999,<br>Sergeant Richard Galea #3495,<br>Sergeant Donald Perrier # 2580<br><br>    Defendants, | Case No. C 14 2345 BLF<br><br>**FIRST AMENDED COMPLAINT FOR CIVIL RIGHT VIOATIONS AND DAMAGES PURSUANT TO**<br>**42 U.S.C. § 1983,**<br>**42 U.S.C § 1985,**<br>**42 U.S.C. § 1986,**<br><br>**DEMAND FOR JURY TRIAL** |

### Jurisdiction

1. This court has jurisdiction under 28 U.S.C. § 1331. Federal question jurisdiction arises pursuant 42 U.S.C. § 1983, 42 U.S.C § 1985, 42 U.S.C. § 1986.

### Venue

2. Venue is proper pursuant to 28 U.S.C. § 1391 because the defendant is a federal government official, and the plaintiff lives in this district.

### Parties

3. Plaintiff Blair Redmond resides in San Jose, California, her mailing address is P.O. Box 21638, San Jose, CA, 95151.

Complaint

4. Defendant, The City of San Jose is located at Office of the City Clerk 200 E. Santa Clara St, San Jose, CA 95113.

5. Defendants, Diep, Pfiefer, Blackerby, Galea, and Perrier are currently employed as Police Officers and Sergeants with the San Jose Police Department at 201 W. Mission St, San Jose, CA 95110.

## Statement of Facts

6. On approximately April 17, 2013 at 4:34 pm Plaintiff Blair Redmond was seated in the driver's side of her car with her boyfriend Joseph Evans who is a witness to everything that occurred in the front passenger seat.

7. The plaintiff was legally parked with my car turned off in a space in the parking lot of Roosevelt Park, located at 901 E Santa Clara St, San Jose, CA 95116.

8. Plaintiff is frequent visitor at the park having been there almost daily for the last 2+ years as her boyfriend (Joseph) skateboards there.

9. Plaintiff was on her phone and Joseph was fixing his skateboard with tools on his lap.

10. There were other vehicles parked much the same as we were with the occupants sitting in their cars enjoying the park.

11. Plaintiff and her boyfriend watched as three plain clothes officers walked around the park. They stood for a few moments by a maintenance wall in our view, and then they walked across the parking lot and over to the passenger side of the car. [See Exhibit photo of police]

12. Defendant Officer Tony Diep stood by passenger window which was almost completely rolled down, and immediately shows signs of aggression towards the Plaintiffs boyfriend and her.

13. The Plaintiff driver's side window was only cracked as she had just come back from using the Roosevelt Community Center restrooms.

14. Defendant Diep was hostile; firing off questions and not even allowing a chance for us to answer. We asked what reason they had to even approach the car and they refused to answer.

15. Defendant Officer Daniel Pfiefer walked around the front of the Plaintiff's car and illegally ordered her to get out of the car. Having committed no crime and stating so; Plaintiff asked under what reason she had to exit her vehicle.

16. The Defendants, Diep, Pfiefer and Blackerby all Police Officers, acted under a mob mentality. They would not state any reason for their presence and were intimidating the Plaintiff and her boyfriend.

17. The Defendants Diep, Pfiefer and Blackerbys intent was to initiate a violent confrontation only.

18. The Plaintiff's boyfriend Joseph told them profiling was illegal and that they had no reasonable suspicion or probable cause of any crime whatsoever to even engage the Plaintiff and him. The defendants were also calmly told we would not answer any of their 'leading" questions without the presence of an attorney and that we wanted to speak to a Sergeant and would wait for his or her arrival.

19. The Plaintiff's boyfriend Joseph also told the Defendants, Diep, Pfiefer and Blackerby that we were going to record the encounter while we waited for their Sergeant.

20. Plaintiff then started to video record from her seat.

21. This only angered Defendant Diep who then shouted, "Get your asses out of the car" and attempted to forcibly open the passenger side door.

22. The Plaintiff then locked her car doors and started to roll up the windows in order to keep Joseph and herself safe from the dangerous and illegal behavior of the Defendants, Diep, Pfiefer and Blackerby.

23. Before the Plaintiff could secure the passenger side window, Defendant Diep reached through the open window and yelled "Knife" and unlocked the passenger side door.

24. Defendant Diep then began to grab at the Plaintiffs boyfriend who was sitting still with his skateboard and tools still on his lap.

25. At the same time, Defendant Diep was grabbing at the Plaintiff boyfriend, Defendant Pfiefer took his flashlight and rained 8 to 10 hammer blows with it onto my window attempting to break it, and he was unsuccessful.

26. Defendant Diep who had yelled "knife" after he reached into the car now had Defendant, who had disappeared from the Plaintiffs driver side door, pointing a gun at the Plaintiff boyfriend Joseph who had both his empty hands raised so he wouldn't be killed for any valid reason.

27. With the door now fully open, a third Defendant Officer Matthew Blackerby violently pulled Joseph out of the car and dragged him towards the Plaintiffs rear passenger bumper.

28. The Plaintiff then watched the Defendants Diep, Pfiefer and Blackerby through the rear window as they attacked her boyfriend. Both Defendants Diep and Blackerby were on top of him.

29. The Plaintiff then got out the car, with her cell phone clearly visible, to document the violent illegal beating they were inflicting upon her boyfriend Joseph.

30. The Plaintiff took about a step and a half towards the back of the car with the cell phone raised in front of her before she saw Defendant Pfiefer frantically coming around the back of the Plaintiffs car toward her.

31. Already having attempted to break the Plaintiffs window and pulling a gun on her boyfriend, the Plaintiff immediately started backing away from Defendant Pfiefer with her phone once again clearly visible and pointed at him.

32. Defendant Pfiefer then said the Plaintiff was under arrest. To which the Plaintiff replied "for what reason and said she was going to record what was happening."

33. Defendant Pfiefer then charged at the Plaintiff and grabbed her right hand in an attempt to ripe her phone from her hands as she was using it to record their illegal actions.

34. Defendant Pfiefer wasn't able to get a hold on the phone and lost his grip. Infuriated, he stomped on the Plaintiffs left foot to pin her in place while he cocked his arm back.

Complaint 4

35. Defendant Pfiefer then violently punched the Plaintiff directly in the face under her right eye. The Plaintiff was immediately shocked, dazed and in pain causing her to stumbled and fall back.

36. Catching herself with her left arm, the Plaintiff settled into a crouched position and tried to cover her head and face with both hands to shield herself from further blows.

37. Defendant Pfiefer violently pulled the Plaintiff by her hair, while raining more blows to her head. He then yanked the Plaintiff up by her right hand and violently wrenched it behind her back with such force there was a loud pop and sharp pain in her right shoulder.

38. Defendant Pfiefer then pushed the Plaintiff face down hard to the concrete. He pinned her left shoulder down with his knee using his full bodyweight, while another Officer who had just arrived ran over and did the same painful maneuver with his knee on my right elbow even though I was already hurt, down, and not resisting.

39. When the Sergeant finally arrived on the scene, he was advised that the Plaintiff wanted to speak to him. Defendant Sergeant Donald Perrier then said, without having even heard a word of what happened from the Plaintiff, asserted that she had assaulted his Police Officers.

40. The Plaintiff then said she refused to speak with Defendant Perrier due to his aggressive and presumptuous greeting.

41. Upon the arrival of the Fire Department, the Plaintiff was checked out while handcuffed in plain view of at least thirty people who witnessed the brutality.

42. The Plaintiff was humiliated as they lifted her shirt exposing her midriff.

43. The Plaintiff was then asked if she wished to go to the hospital. Upon the answer of yes, she was told by Officer Wendy Hoskin that if she chooses to go to the hospital that she would sit there for 6 to 8 hours. After which time she would then be sent to booking and sit there for another 6 to 8 hours. After hearing this and still being in a state of shock, she assumed that the truth would set her free and she decided to tell her story to the Defendants Diep, Pfiefer and Blackerbys direct Sergeant Richard Galea once she arrived in booking.

44. The Plaintiff was then transported and upon speaking to Defendant Galea it was clear that he didn't believe anything that the Plaintiff was telling him and he was only interested in covering for the Defendant actions. He attempted several times to but the blame on the Plaintiff and her boyfriend who were clearly the victims as they committed no crime.

45. The Plaintiff was then asked leading and untrue questions about what took place as Defendant Galea started and stopped his recording device which was between his legs and not in plain view.

46. Upon the completion of the Plaintiff telling Defendant Galea what happened, he then told her she was facing felony assault charges against a Peace Officer and was headed to jail.

47. Defendants Diep, Pfiefer, Blackerby, Perrier and Galea then falsified the police reports thus conspiring to violent my civil rights. [See Exhibit Police Reports]

48. The Plaintiff was then illegally arrested, questioned, booked, and illegally incarcerated at Elmwood Jail where she was exposed to the criminal element even though she had committed no crime. **[See Exhibit A Booking sheet ]**

49. The Plaintiff was released on Supervised OR April 18, 2013 which required her to call and check in every week the entire length of the case.

50. The Plaintiff went to the doctors following her release to have the shoulder checked out as it was the injury that gave her the most pain. **[See Exhibit B Medical Records]**

51. At the time of the incident, the Plaintiff was in her last semester of College at CSU East Bay and was set to Graduate in the Spring of 2013 with a BA in US History.

52. Following the pressure and stress from facing criminal charges, being assaulted and having her rights violated by the Police. The Plaintiff was forced to withdrawal from her final two classes, postponing her graduation which her mother had already brought dresses and arranged travel to California.

53. Before the Plaintiff's official withdrawal from school, she sought counseling through her colleges Health Center.

54. The Plaintiffs mother Deborah Redmond had to come from Nebraska and take care of her in the immediate aftermath of this unfortunate incident. She accompanied the Plaintiff to several court hearings, made sure she was eating, had a safe place to stay, had someone to talk to about her feelings regarding what happened, etc…

55. The Charges against the Plaintiff were dismissed four and a half months later on August 12, 2013 due to lack of evidence. Her boyfriend was released the same day. [**See Exhibit C Court Record**]

56. However, the damage was already done. As a result of SJPD misconduct the Plaintiff suffered the following damage:

57. Physical damage: Forearm scrapes to both arms, right shoulder sprain, swelling to the back of the head, redness, red dots and swelling under right eye, tender left wrist, pain on left side of knee, low energy, migraines, upset stomach including diarrhea, nausea), shaking, excessive sweating, inability to sleep on right side, and loss of normal use of dominant arm due to consistent pain. [**See Exhibit B Medical Records**]

58. The Plaintiff has pending medical care. [**See Exhibit B Medical Records**]

59. Cognitive damage: worrying, racing thoughts, inability to focus, forgetfulness and disorganization, flashbacks and nightmares.

60. Behavioral Damage: Procrastinating and avoiding responsibilities, exhibiting nervous behaviors (fidgeting, nail-biting), Changes in appetite (either overeating or under), Insomnia, Isolating oneself, Uneasiness in public, loss of interest in activities the Plaintiff once enjoyed.

61. Emotional damage: Moodiness, Separation anxiety (being away from boyfriend for four and a half months), anxiety over false charges filed against me and possible incarceration up to one year, crying and shaking fits, irritability, inability to relax, and Depression.

62. Property damage: The tow and storage fee as my car was towed due to my false arrest, loss of scales to weigh out my medicinal cannabis, about an eighth of medicinal cannabis that was illegally seized a set of ceramic bearings that were lost in the illegal search of the Plaintiffs car.

63. Defendants Diep, Pfiefer, Blackerby, Perrier and Galea racially profiled, falsified police reports, falsely charged the Plaintiff with battery and resisting arrest illegally arrested (which were completely and rightly dropped), Violated 1st, 4th, 8th and 14th Amendment rights, and illegally incarnated the Plaintiff.

64. The Plaintiff filed a claim for damages with Defendant City of San Jose on Oct 20, 2013.

65. The claim was rejected Defendant City of San Jose by the and a lawsuit was filed on May 20, 2014.

## Claim I

(Violation of civil rights: Abridging the freedom of speech/ Defamation)

(1St Amendment/42 U.S.C. § 1983 & 28 U.S. Code § 4101 )

66. Plaintiff realleges paragraphs 6 through 65.

67. By doing the acts described above in Paragraph 6-65, Defendants caused and/or permitted the violation of Plaintiff's First Amendment rights to the freedom of speech and defamation, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 1983 & 28 U.S. Code § 4101.

## Claim II

(Violation of civil rights: Unlawful arrest, searches and confinement in custody)

(4th and 14th Amendments/42 U.S.C. § 1983)

68. Plaintiff realleges paragraphs 6 through 65.

69. By doing the acts described above in Paragraph 6-65, Defendants Diep, Pfiefer, Blackerby, Perrier and Galea caused and/or permitted the violation of Plaintiff's Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

## Claim III

(Violation of civil rights: Depravation of life, liberty, or property without procedural due process)

(4th and 14th Amendments/42 U.S.C. § 1983)

70. Plaintiff realleges paragraphs 6 through 65.

71. By doing the acts described above in Paragraph 6-65, Defendants Diep, Pfiefer, Blackerby, Perrier and Galea caused and/or permitted the violation of Plaintiff's Fourth and Fourteenth Amendment rights to be free from depravation of life, liberty, or property without procedural due process, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

## Claim IV

(Violation of civil rights: Excessive force, law enforcement officers engaged in police brutality.)

(4th and 8th Amendments/42 U.S.C. § 1983)

72. Plaintiff realleges paragraphs 6 through 65.

73. By doing the acts described above in Paragraph 6-65, Defendants Diep, Pfiefer, Blackerby, Perrier and Galea caused and/or permitted the violation of Plaintiff's Fourth and Eighth Amendment rights to be free from excessive force, law enforcement officers engaged in police brutality, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

## Claim V

(Violation of civil rights: False arrest claims against law enforcement officers who abuse their arrest and detention powers.)
(4th and 8th Amendments/42 U.S.C. § 1983)

74. Plaintiff realleges paragraphs 6 through 65.

75. By doing the acts described above in Paragraph 6-65, Defendants Diep, Pfiefer, Blackerby, Perrier and Galea caused and/or permitted the violation of Plaintiff's Fourth and Eighth Amendment rights to be free from false arrest claims against

law enforcement officers who abuse their arrest and detention powers, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

### Claim VI

(Violation of civil rights: Conspiracy to interfere with civil rights/ Depriving persons of rights or privileges/ Action for neglect to prevent)

(4th and 8th Amendments/42 U.S.C. § 1983, 42 U.S. Code §1985 and 42 U.S. Code §1986 )

76. Plaintiff realleges paragraphs 6 through 65.

77. By doing the acts described above in Paragraph 6-65, Defendants Diep, Pfiefer, Blackerby, Perrier and Galea caused and/or permitted the violation of Plaintiff's Fourth and Eighth Amendment rights to be free from conspiracy to interfere with civil rights, depravation of rights or privileges, and action for neglect to prevent, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 1983 & 42 U.S. Code §1985.

### Claim VII

(Violation of civil rights: to be free from cruel and unusual punishment)

(8th Amendment/42 U.S.C. § 1983, 42 U.S. Code § 1985, 42 U.S. Code § 1986)

78. Plaintiff realleges paragraphs 6 through 65.

79. By doing the acts described above in Paragraphs 6 through 65, Defendants Diep, Pfiefer, Blackerby, Perrier and Galea caused and/or permitted the violation of Plaintiff's Eighth Amendment rights to be free cruel and unusual punishment, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 1983, 42 U.S. Code § 1985, 42 U.S. Code § 1986.

### Request for Relief

WHEREFORE, the plaintiff requests: judgment against Defendants in the amount of $1,953,404.25; for;

80. Compensatory damages, including general and special damages, and Punitive damages, according to proof;

81. Any further relief which the court may deem appropriate.

### Demand for Jury Trial

82. Plaintiff hereby requests a jury trial on all issues raised in this complaint.

Dated: June 19, 2014

*Blair Redmond*

By: *Blair Redmond*

Plaintiff in Pro Se